Clayeo C. Arnold, Esq., SBN 65070
Anthony J. Poidmore, SBN 51346
**CLAYEO C. ARNOLD**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 924-3100
Facsimile: (916) 924-1829
Email: apoidmore@justice4you.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC REININGA,<br>Plaintiffs,<br>vs.<br>TIMOTHY BELAVICH, JEFFREY BEARD AND GARY VIEGAS;<br>Defendants. | Case No.: 2:16-CV-0811-TLK-CKD<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT GARY VIEGAS' MOTION TO DISMISS<br><br>Date: July 14, 2016<br>Time: 2:00 pm<br>Dept: 2 |

## I. INTRODUCTION

Plaintiff Eric Reininga is a licensed psychologist who worked for the California Department of Corrections and Rehabilitation (CDCR). Plaintiff leaked certain information to the Sacramento Bee regarding wrongdoing by CDCR and its employees. That leak was later investigated by Defendant Viegas.

Plaintiff has brought an action under Section 1983 against CDCR and certain of its employees, including Viegas, claiming that Defendants violated his first amendment right to free speech. Specifically regarding Viegas, who was an investigator for CDCR, Plaintiff alleges that the manner and methods employed by Viegas in the investigation were designed to punish his free speech and to send a message to chill the speech of others. Viegas here brings a Motion to Dismiss under Federal Rule of Civil Procedure (FRCP) 12(b)(6).

## II. LEGAL STANDARD

Dismissal is appropriate under FRCP 12(b)(6) when a Plaintiff's allegations fail "to state a claim upon which relief can be granted." FRCP 12(b)(6) In evaluating the sufficiency of a complainant's allegations a court must assume the facts alleged in the complaint to be true unless the allegations are controverted by exhibits attached to the complaint, matter subject to judicial notice or documents necessarily relied on by the complainant complaint and to whose authority no party questions. *Lee v. City of Los Angeles* 250 F.3d 668, 688-689 (9th Cir. 2001). A complaint attacked by a Rule 12(b)(6) Motion to Dismiss does not require detailed factual allegations. However, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl Corp v. Twomby* 550 US 544, 555 (2007) A court should not grant dismissal unless the Plaintiff has failed to "plead enough facts to state a claim for relief that is plausible on its face." *Bell, supra.* Moreover, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, In.* 143 F.3d 1293, 1296 (9th Cir. 1998) The Ninth Circuit has "repeatedly held that a District Court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possible be cured by the allegation of other facts." *Lopez v. Smith*, 203F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## III. PLAINTIFF HAD A FIRST AMENDMENT RIGHT TO DISCLOSE THE INFORMATION TO THE SACRAMENTO BEE

Courts evaluating claims by public employees who allege discharge in derogation of their first amendment rights must engage in a two step inquiry. First, courts must determine whether the employee's speech can be "fairly characterized as constituting speech on a matter of public concern." If so, courts must strike "a balance between the interests of the employee as a citizen, in commenting upon matters of public concern, and the interest of the state, as an employer, in promoting the efficiency of the public services

it performs through its employees." *Pickering v. Board Educ.,* 391 US 563, 568; *Connick v. Meyers* 461 US 138, 146.

**A. Plaintiff Spoke As A Private Citizen On A Matter Of Public Concern**

Defendant does not dispute that Plaintiff spoke as a private citizen[1] but claims that the nature of his disclosure was not of public concern.

Defendant argues that Plaintiff's disclosure was not a matter of public concern because, under HIPAA, an individual's protected health information is by its very definition a matter of private, not public, concern. Defendant cites no authority for this claim and the claim is manifestly inaccurate. The HIPAA regulations themselves list numerous exceptions to the rule of non-disclosure.

Defendant sets up a straw man argument by citing one of the HIPAA exceptions, implying that it is the only potentially applicable exception, then pointing out that the exception permits disclosure only to certain listed entities or individuals, none of which include a newspaper reporter such as the one to whom Plaintiff made his disclosure. This regulation has no applicability to the facts of our case. It shields a covered entity who also is an employer whose workforce member discloses protected health information under certain enumerated facts. Although Plaintiff, as a licensed psychologist, is a covered entity, he is not an employer and the disclosure here was not made by one of his "workforce members". This regulation, by its terms, would not protect Plaintiff regardless of to whom he made the disclosure.

Instead, the regulation permitting disclosure under the facts of this case is found at CFR 164.512(j)(1)(i) which provides: "a covered entity may, consistent with applicable law and standards of ethical conduct, use or disclose protected health information, if the

---

[1] Plaintiff's complaint at paragraphs 46 and 47 alleges that he was aware that the conduct of CDCR was a matter of public concern, implicating the constitutional rights on prison inmates, their health and safety, and misconduct on the part of government officials and, although it was not a part of his job duties to report such wrongdoings, he felt strongly that the public needed to be aware of the facts in order to remedy the situation. Thus it was not merely a matter of private interest or some banal workplace grievance, but a matter of public concern.

covered entity, in good faith, believes the use or disclosure: (A) is necessary to prevent or lessen a serious and imminent threat to the health or safety of a person or the public and, (B) is to a person reasonably able to prevent or lessen the threat, - - -".

**1. Plaintiff in good faith believed the disclosure necessary to lessen a serious and imminent threat to the health or safety of the public**

Plaintiff's complaint alleges as follows: a federal civil rights lawsuit (the Coleman action) had been filed in 1990 under the 8th and 14th amendments to the US Constitution. In 1994 a Magistrate Judge found CDCR's delivery of mental health care to mentally ill inmates violated the 8th amendment to the US Constitution. The Coleman action is still pending. (Par. 9) The court issued a permanent injunction mandating certain forms of treatment for mentally ill inmates and ordered that a Special Master be appointed to monitor compliance. (Par 10) Plaintiff, a licensed psychologist, worked extensively on Coleman compliance. (Par. 11) Over the years Plaintiff noted that CDCR developed a siege mentality with the monitors, seeking to hold back as much information as possible. (Par14) The Psychologists who authored suicide review reports often found their words and findings changed and were often in disagreement with the changes. (Par. 15) Joseph Damien Duran was an individual with multiple psychiatric disorders (Par. 16) who had undergone a tracheal stenosis surgical procedure resulting in a trachestomy tube. (Par. 17) On August 30, 2013 Duran was imprisoned at a CDCR facility (Par. 19) and three days later handed correctional staff a note indicating he was suicidal. (Par. 20) On the evening of September 6 Duran was pepper sprayed directly into his face with a significant amount entering through his trachestomy tube. (Par. 26) Duran began exhibiting signs of physical distress and was in obvious need of immediate and emergent medical care yet, contrary to written CDCR rules regarding the use of pepper spray, no CDCR employee attempted to obtain medical assistance for Duran. (Par. 28) Duran continued to deteriorate, continued to be ignored by CDCR personnel despite observations indicating an obvious need for care and the following morning, September 7, he was found dead in his cell. (Par. 29-36)

Duran's death coincided with hearings being conducted in Federal Court in the Coleman case. A focus of the hearing was CDCR's Use-Of-Force Policy, including the improper use of pepper spray with mentally ill patients. Another was the Department's inadequate policies in regard to suicide prevention for mentally ill patients. (Par. 37) CDCR then used its Code of Silence in a cover up strategy of intentionally false, misleading and withheld information to keep the true facts from the Coleman monitors and the court, which was at that time conducting hearings in the Coleman case. (Par. 37, 38) Based on intentionally false information given by CDCR, the Amador County Sheriff- Coroner classified the death as a suicide. (Par. 39, 40) Plaintiff believed that CDCR's conduct "was a matter of public concern by implicating the constitutional rights of public inmates, their health and safety, and misconduct on the part of government officials. (Par. 46) Plaintiff believed that "the public needed to be aware of the facts so that steps could be taken to remedy the situation and avoid future violations of constitutional rights, future unwarranted risks to the health and safety of inmates, and to prevent future wrongdoing on the part of government officials." (Par. 47)

Defendant does not even suggest that Plaintiff's belief that disclosure was necessary to prevent or lessen a serious and imminent threat to the health or safety of inmates was not made in good faith. Further, the court must assume the facts alleged in the complaint to be true unless controverted by exhibits attached to the complaint, matters subject to Judicial Notice or documents necessarily relied on by the complaint. (*Lee, supra,* 250 F.3d at 688-689.) The allegations therefore establish the first prong of the CFR 164.512(j)(1)(i) exception.

**2. The disclosure was to a person reasonably able to prevent or lessen the threat**

Plaintiff felt that, because "nearly everyone in his chain of command, even the Attorney General's Office, was complicit, he believed there was no one to whom he could report who could be relied upon to bring the wrongdoing to light and to take steps to correct the problem." (Par 46) Not wanting the information to remain a victim of the Code

of Silence Plaintiff provided the information regarding the cover up to a Sacramento Bee Reporter "in order to bring to light the wrongdoing occurring at CDCR and thereby hopefully bring about beneficial change." (Par. 49) Thus Plaintiff's disclosure was permissible pursuant to CFR 164.512(j)(1)(i) if Plaintiff reasonably believed the Bee reporter was "a person reasonably able to prevent or lessen the threat.".

It was reasonable for Plaintiff to disclose the original Duran Suicide Report dated October 31, 2013 as that was necessary to accomplish the intended purpose of the disclosure. On January 7, 2014, CDCR finally (two months late) provided the Coleman monitors the "Final Suicide Report" (Par. 50). This is the report from which facts were omitted and changed. The January 7, 2014 report "did not include specific findings regarding the custodial failings and the impact of the use of pepper spray on the behavior and ultimate death of Duran that were reported in the October 31, 2013 version of the report provided to the reporter. The January 7 report also omitted other highly relevant information implicating wrongful conduct on the part of CDCR employees. (Par. 51) Without disclosing the October 31, 2013 Duran Suicide Report for comparison with the January 7, 2014 report, the omissions, misrepresentations and wrongdoing would not have been apparent.

Plaintiff's belief that the Sacramento Bee reporter was able to "prevent or lessen the threat" was reasonable. The Bee had published numerous front page stories regarding the Coleman matter and was following it closely. A Sacramento Bee article published in the very venue in which the Coleman court was sitting would likely come to the attention of the court and the monitors. In fact, as a result of the new information brought forth, the federal Judge in the Coleman case ordered the evidentiary hearing to be reopened and additional evidence was provided by the class attorneys which led the Federal Court to declare in April 2014 that California's treatment of its mentally ill inmates was "horrific" and unconstitutional. (Par. 52-54) Thus steps were taken to lessen future improper medical treatment of inmates. The Bee article reasonably could, and in fact did, lessen the threat. Shining a bright light on wrongdoing frequently has a curative effect.

### B. The Interest Of Plaintiff Outweighs Defendant's Interest In This Case

Defendant argues that the balance of interests favors Defendant because Reininga "had other, legitimate avenues for voicing his concerns without illegally leaking protected health information to the media while CDCR has a compelling, legally mandated interest in insuring that its employees comply with HIPAA and, thus, in investigating the unauthorized leak. Defendant concludes: "Thus, CDCR's interest in investigating the unauthorized leak of HIPAA-protected information vastly outweighed Reininga's interest in disclosing it. - - ". However, we are not here dealing with the issue of whether CDCR had an interest in investigating the leak but rather whether Viegas had an interest in employing the manner and method of investigation, including intimidation, denial of due process, and misrepresentation of facts which he employed and whether that interest outweighs Plaintiff's interest in disclosing these matters of public concern.

Defendant, in his argument regarding the balancing of interest, first notes the absence of any Ninth Circuit authority discussing how the *Pickering* balance test applies in the context of "legally prohibited speech" and cites to three decisions from other federal courts which, Defendant argues, favor a finding for him on this issue. It should initially be noted that, in this case, we are not dealing with "legally-prohibited speech". As noted above in section III, A, Plaintiff's speech and the information he disclosed was fully legal within the HIPAA rules. Nevertheless, the three cases cited by Defendant[2], rather than favoring Defendant's position on this issue, favor Plaintiff's. The factual distinctions between the three cases cited by Defendant Viegas and this case highlights that the weighing of the *Pickering-Connick* factors would favor Plaintiff in the case at hand.

Interestingly, the Plaintiffs in each of the three cases cited by Defendant leaked confidential information, prohibited by law or rule, to a newspaper reporter and in each of

---

[2] The three cases cites are: *Magalis v. Adams* 879 F.Supp.2d 976 (C.D. Ill.); *Barnard v. Jackson County, Mo.*, 43 F.3d 1218 (1995); and *Jurgensen v. Fairfax County, Va.* 745 F.2d 868 (1984).

the three cases the court found that the relative interests weighed in favor of the employer. Defendant first cites *Magalis v. Adams* 879 F. Supp.2d 976(C.D. Ill.) in which the Plaintiff state employee surreptitiously obtained an internal investigative report about another employee's unethical conduct and, fearing his agency was trying to cover up the employee's misconduct, leaked the report to the local newspaper and was fired.

The *Magalis* court noted that when conducting the balancing test, the court considers seven factors: "(1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform [his] responsibilities; (4) the time, place, and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to inform ed decision-making; and (7) whether the speaker should be regarded as a member of the general public" *Magalis*, 879 F.Supp at 989.

The *Magalis* case was decided on Summary Judgment and the evidence showed that Plaintiff's interest in making the report public was his belief that the co-employee's termination was not happening fast enough. Although the *Magalis* court found this was a matter of public concern it was not a matter of sufficiently strong public concern to outweigh the fact that the report disclosed the names of co-employees who had given information to the auditor in confidence. (*Magalis* at pg 990-991) Unlike the Plaintiff in *Magalis*, Reininga disclosed a matter of the utmost public concern- wrongdoing, misrepresentations, violations of constitutional rights and, in effect, misleading a court by a public entity.

*Magalis* argued that the factor regarding the time place and manner of the speech should be weighed in his favor because he "could not report his suspicions to the very people who were possibly engaging in the cover up." As indicated, however, *Magalis* was decided on summary judgment and the court concluded that Plaintiff provided no evidence of a cover up. (*Magalis* at 991) In contrast, Plaintiff Reininga's allegations contained in

paragraphs 48 and 49 of the complaint must be taken as true on this Motion to Dismiss.

Defendant also cites *Barnerd v. Jackson County, Mo,* 43 F.3d 1218 (1995) in which Plaintiff, a legislative auditor, frequently discussed his conclusions with the press prior to providing his report to the legislature. Several legislators became aware and thus Plaintiff was instructed to defer discussions with third parties before the legislature was provided with the audit for personal review. Despite these instructions Plaintiff met with several members of the editorial staff of the newspaper to garner their support for the results and conclusions he reached in the report. The legislature became aware of the leak and terminated Plaintiff for these contacts. The court noted that when the legislators were contacted by the press and constituents concerning audits and investigations, the results of which they were unaware, they were prevented from communicating knowledgeably concerning the matters which had been leaked and this had the potential to erode citizen confidence in a competent and informed legislature. The court found this outweighed Plaintiff's interest in disclosing the material merely in order to garner support for his position. After first noting that "allegations of corrupt practices by government officials are of the utmost public concern" (citation omitted) (Id at 1225), the court then noted that "insofar as self-interest is found to have motivated public-employee speech, the employee's expression is entitled to less weight in the *Pickering* balance than speech on matters of public concern intended to serve the public interest." (Id at 1226) If Plaintiff's motives are less altruistic, the court will accord this expression less weight than if purely intended to serve the public's interest. (Id.)

Again, Plaintiff disclosed matter of the utmost public concern. Moreover, Plaintiff Reininga's motives were purely altruistic. He was not paid for the disclosure. He sought no glory or notoriety. If he had his way his identity as the discloser would never have been known by anyone other than his wife and the Bee reporter. As a citizen, the only personal benefit he could possibly have derived from the disclosure is the hope that it would prevent his government institutions from engaging in serious constitutional violations of inmates' rights and endangerment of their health and safety. (Complaint Par. 47) A concomitant

benefit to Plaintiff, as an employee, was the hope that he and his fellow employees would not be forced in the future to participate in attempts to thwart court-ordered oversight of the agency which had been designed to monitor the agency in order to assure that it not engage in cruel and unusual punishment and other violations of the inmates' rights and endangerment of their health and safety.

Similarly in the *Jurgensen v. Fairfax County, Va*, 745 F.2d 868 (1984) case cited by Defendant, the inspection report released by plaintiff to the newspaper was found by the court to be "unquestionably a typical report, with a minimum of critical comment and a complete absence of a charge of corruption, abuse of process or power, waste or mismanagement." *Jurgensen, supra,* 745 F.2d at 872. It was thus of only slight public concern. Jurgensen was aware prior to releasing the report to the press that the Department had specifically refused to do so. The *Jurgensen* court noted that in weighing the factor relative to the impact such disclosure would have on the morale and efficiency of the agency, it is not necessary for the agency to prove that morale and efficiency in the agency have actually been adversely affected by the publications; it is sufficient that such damage to morale and efficiency is reasonably to be apprehended." (Id. at 879)

In considering the factor weighing the impact of the speech or activity on the efficiency, discipline and proper administration of the government agency, it can be argued in Reininga that morale and efficiency would reasonably be apprehended to be improved rather than harmed. Employees want to feel good about the job they are doing. Few employees would want to work for an employer which insists in their participation in illegal and unethical conduct. Moreover, proper administration of the agency requires that it not engage in the perpetration and cover up of serious violations of the constitutional rights of inmates, including the right to be free from cruel and unusual punishment.

A weighing of the *Pickering-Connick* factors is fact specific. Defendant Viegas, in his Motion, gives no detailed discussion of the factors in light of the facts alleged in the complaint and why, under those facts, the balance favors Viegas.

## IV. VIEGAS IS NOT ENTITLED TO THE QUALIFIED IMMUNITY

Qualified immunity protects a state or local official who violated Plaintiff's federally protected rights so long as the official did not violate clearly established federal law. *Harlow v. Fitzgerald* 457 US 800 (1982).

In the Ninth Circuit, although the Plaintiff has the initial burden of establishing that the rights allegedly violated were clearly established, the Defendant asserting the right ultimately has the burden of proving the defense. (*Beningini v. City of Hemet* 879 F.2d 473, 479 (9th Cir. 1988); *Houghton v. South* 965 F.2d 1532 (9th Cir. 1992).)

A court required to rule upon qualified immunity of a government official must consider, as its initial inquiry, whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. *Saucier v. Katz* (2001) 533 US 194, 201. If the court determines that a favorable view of Plaintiff's alleged facts show that the official's conduct violated a constitutional right, a court's next step is to ask whether such right was clearly established. This inquiry must be undertaken in light of the specific context. (Id.) In determining whether a constitutional right is "clearly established", the relevant, dispositive inquiry is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. *Saucier, supra,* 533 US at 202.

"If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing the conduct. *Harlow, supra,* 457 US at 818. The *Harlow* court noted that qualified immunity would be defeated if an official "'*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], - - - .'" *Harlow, supra,* 457 US at 815. There need not be a case on all fours. If that were the rule, there would never be a first decision that could be cited as precedent.

Defendant Viegas first concedes, citing *Coszalter v. City of Salem,* 320 F.3d 968 (9th Cir. 2003) that abundant precedent stands for the broad proposition that government employees generally have a first amendment right to speak to the press about matters of

public concern. Viegas then argues that precedents which hold that employees engage in protected speech when *legally* disclosing information would not give Viegas notice that, in investigating Reininga's *illegal* disclosure of information, he was violating the first amendment. (Viegas Memorandum of Points and Authorities, page 15:16-25.) He argues that the pertinent inquiry here is not that Reininga had a first amendment right to communicate with the news media about prison healthcare or CDCR's alleged wrong doing. Rather, the inquiry is whether a reasonable public employee would have known that, by investigating the source of the *illegally* leaked suicide report, he was violating Reininga's first amendment rights.

In the first instance, it isn't the mere fact that Viegas conducted an investigation that is at issue. It is the way he went about it. Moreover, Viegas misstates the particularized inquiry. As noted above, not only does Plaintiff have a generalized constitutional right to free speech but, as a healthcare provider (covered entity) he has a particularized clearly established right to disclose protected health information, if he, in good faith, believes the use or disclosure is necessary to prevent or lessen a serious and eminent threat to the health or safety of a person or the public and is to a person reasonably able to prevent or lessen the threat. CFR 164.512(j)(1)(i) Under qualified immunity, government officials are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which they knew or reasonably should have known. *Harlow v. Fitzgerald,* 57 US 800, 818. Defendant Viegas is an investigator for CDCR investigating alleged violations of laws and regulations. In this case he was investigating, in part, disclosure of Duran's personal health information. As an individual charged with investigating potential violations of the HIPAA law he is charged with knowledge of that law and it can be assumed that he knew, or reasonably should have known, the parameters of that law.

Moreover, Viegas conducted the investigation in a manner that was intimidating and that violated Plaintiff's due process rights. Section 31140.27 of CDCR's operations manual allows use of state time for investigative matters. It states "absent an emergency,

employees may request and shall be allowed reasonable state time by the supervisor to contact/secure a representative and to discuss the matter prior to any meeting/interview that may lead to adverse action. The employee shall also be allowed reasonable state time to prepare for the interview/meeting with the representative." (Par. 62) (Exhibit 1 to Plaintiff's Request for Judicial Notice) There is no question that the Plaintiff's meeting with Viegas was a meeting that "may lead to an adverse action". (Par. 59) Despite this, and despite the absence of any emergency, Viegas denied a request for a short continuance of the interview by an attorney contacted by Plaintiff in order to given the attorney an opportunity to prepare with Plaintiff and accompany him to the interview. Viegas denied the request and informed the attorney Plaintiff would either show up the next day at the interview or be fired. (Par. 61, 63) Viegas, in a further attempt to retaliate against and intimidate Plaintiff, phoned him at least two times that same day threatening that if he did not show up the following day he would be fired. Plaintiff asked several times whether Viegas could put off the interview so that his attorney could accompany him but Viegas stated words to the effect: "No, it's been decided, you must be there tomorrow. Be there or be fired." Thus, despite Viegas' presumptive knowledge of Plaintiff's constitutional rights to speak out regarding wrongdoings at CDCR and his presumptive knowledge of Plaintiff's right under Due Process and under the operation manual, absent an emergency, to be allowed reasonable state time to prepare for the interview/meeting with his representative,[3] Viegas intimidated, harassed, pressured and denied Plaintiff ample preparation time. The precise nature of retaliation is not critical to the inquiry in first amendment retaliation cases; the goal is to prevent, or redress, actions by a government employer that chill the exercise of protected First Amendment rights, and even minor acts of retaliation can infringe on an employee's First Amendment rights. *Coszalter v. City of Salem* (2003), 320 F.3d 968, 974-975.

---

[3]Plaintiff, in his capacity as an employee of the state, also has a property interest in his job and is entitled to due process rights.

Had Plaintiff had an opportunity to consult with an attorney the interview likely would have gone differently. No ethical and competent attorney consulting with Plaintiff after the disclosure would recommend that he deny the disclosure. Instead, an ethical attorney would advise Plaintiff that he is required to tell the truth and a reasonably competent attorney would recognize that Plaintiff's disclosure, under the circumstances, was lawful.

Thus Viegas is not entitled to qualified immunity as a matter of law and his Motion should be denied.

## V. CONCLUSION

Should the court grant the motion to dismiss, plaintiff requests leave to amend to state causes for violation of his first, fourteenth and fourth amendment rights.

Date: June 30, 2016

CLAYEO C. ARNOLD
A Professional Law Corporation

By: /s/ Anthony J. Poidmore
Anthony J. Poidmore
Attorney for Plaintiff