UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC REININGA,<br><br>    Plaintiff,<br><br>    v.<br><br>TIMOTHY BELAVICH, JEFFREY BEARD and GARY VIEGAS,<br><br>    Defendants. | No. 2:16-cv-00811-TLN-DB<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS.** |

This matter is before the Court on Defendants Gary Viegas ("Viegas"), Timothy Belavich ("Belavich") and Jeffrey Beard's ("Beard") (collectively "Defendants") Motions to Dismiss.[1] (Motions to Dismiss, ECF Nos. 8-1 & 18-1.) Plaintiff Eric Reininga ("Plaintiff") opposes Defendants' motions. (Plaintiff's Opposition to Defendants' Motions to Dismiss, ECF Nos. 11 & 19.) For the reasons set forth below, the Court hereby GRANTS Defendants' motions.

### I.    F<small>ACTUAL</small> B<small>ACKGROUND</small>

Plaintiff alleges he began working as a psychologist for the California Department of Corrections and Rehabilitation ("CDCR") in late 2007 and was promoted to Senior Psychologist Specialist in 2010. (Complaint, ECF No. 1 ¶ 3.) In 1995, the United States District Court for the

---

[1] Viegas filed a separate Motion to Dismiss prior to the combined Motion to Dismiss from Belavich and Beard. The Court will consider both Motions to Dismiss as one since they vary minimally and are substantively identical.

1

Eastern District of California "issued a permanent injunction mandating certain forms of treatment for mentally ill inmates" and assigned a Special Master to "monitor compliance with the court-ordered injunctive relief." (ECF No. 1 ¶ 10.) In June 2010, Plaintiff was assigned to edit CDCR reports prior to submitting them to the Special Master. (ECF No. 1 ¶ 12.) Plaintiff alleges he was instructed to either edit out negative portions of reports or to curb positive reports to ensure the standard of care for all CDCR prisons remained low. (ECF No. 1 ¶ 12.)

In September 2013, Joseph Damien Duran, a mentally ill prisoner, "was placed on Suicide Prevention" at Mule Creek State Prison and then reduced to "violence precautions" the following day. (ECF No. 1 ¶¶ 16–22.) Plaintiff alleges Duran refused to be handcuffed on the same day his status changed "and refused to remove his hands from the food port" when officers attempted to give him medication. (ECF No. 1 ¶ 25.) Plaintiff alleges Duran's lack of cooperation caused the officers to empty a can of OC Pepper Spray "directly into Duran's face and neck with a significant amount entering his throat through the trachestomy [sic] tube." (ECF No. 1 ¶ 26.)

Plaintiff alleges correctional staff observed strange behavior after Duran was pepper-sprayed, but the staff did not attempt to remove Duran from his cell or provide him with medical attention. (ECF No. 1 ¶¶ 28–35.) Plaintiff alleges the "doctor of the day" at the prison and Duran's psychiatrist initially ordered nursing staff to evacuate Duran from his cell, clean his wound, and administer medicine, however, correctional staff failed to comply. (ECF No. 1 ¶¶ 30–32.) The next morning, "Duran was found unresponsive and not breathing on the floor in his cell and approximately one half hour later was pronounced dead." (ECF No. 1 ¶ 36.) The Amador County Sheriff-Coroner classified Duran's death as suicide caused by asphyxia. (ECF No. 1 ¶ 40.)

Plaintiff was not present for any of the events leading up to Duran's death. Plaintiff alleges "that numerous CDCR correctional and medical persons, in order to avoid any implication of wrongdoing . . . deliberately gave false information to the Amador County Sheriff-Coroner[.]" (ECF No. 1 ¶ 39.) Plaintiff alleges "CDCR headquarter staff edited the reviewer's report and pressured the reviewer and coordinator to change portions of the suicide review to decrease the appearance of negligence." (ECF No. 1 ¶ 43.)

Plaintiff alleges he strongly believed CDCR's practices would change once the public was aware of Duran's death. (ECF No. 1 ¶ 47.) Plaintiff suspected everyone, including the Attorney General's office, was complicit in covering up Duran's death, so he did not believe he could speak with anyone internally. In December 2013, Plaintiff "provided the original Duran Suicide Report" to a Sacramento Bee reporter. (ECF No. 1 ¶ 49.) The report Plaintiff gave to the reporter was different from the report given to the Special Master on January 7, 2014. (ECF No. 1 ¶¶ 50–51.) On January 21, 2014, the Sacramento Bee published an article about Duran's death and CDCR's suspected role in covering up the negligence of the corrections officers. (ECF No. 1 ¶ 52.)

After the article was published, CDCR launched an expansive internal investigation. (ECF No. 1 ¶ 56.) Plaintiff alleges Defendant Viegas "searched not only work computers but . . . obtained the records of Plaintiff's personal cell phone[.]" (ECF No. 1 ¶ 57.) On February 17, 2015, Viegas instructed Plaintiff to report for an administrative inquiry the following day. (ECF No. 1 ¶ 59.) Plaintiff alleges he requested to continue the inquiry to allow him to bring an attorney to the meeting. (ECF No. 1 ¶ 63.) He alleges Viegas refused to provide an extension. (ECF No. 1 ¶ 63.) Plaintiff attended the meeting with his union representative and "denied certain facts during the interview, including any knowledge of the whistleblow." (ECF No. 1 ¶¶ 65–68.) It is unclear how Defendants became aware that Plaintiff lied during his interview. Once Defendants learned of Plaintiff's misconduct, Plaintiff alleges Belavich and Beard terminated Plaintiff's employment, despite his prior good behavior. (ECF No. 1 ¶¶ 70–71.)

**II. STANDARD OF LAW**

A. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." On a motion to dismiss, the factual allegations of the complaint are assumed to be true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary

to state his claim and the grounds showing entitlement to relief." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2009)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Additionally, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

///

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Federal Rule of Civil Procedure 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### B. Qualified Immunity Standard

Qualified immunity is an "immunity from suit" and is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity is applicable to "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity can be "defeated if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury[.]" *Id.* at 815 (citing *Wood v. Strickland*, 420 U.S. 308, 322 (1975)).

To determine whether Defendants are entitled to qualified immunity, the Court asks (1) whether the alleged misconduct violated a right and (2) whether the right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court decides in its discretion whether to address the first or second prong first. However, if the Court initially addresses the first prong and finds that no constitutional right was violated under the alleged facts, the inquiry ends and defendants prevail. *See Saucier v. Katz*, 533

U.S. 194, 201 (2001). As to the second prong, a right is clearly established when "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The second prong is reviewed using an objective standard, the official's subjective belief about what was reasonable is irrelevant. *Id.* at 641. To analyze the second prong, the plaintiff's right should be narrowly defined to consider the distinct circumstances. *Plumhoff*, 134 S.Ct. at 2023.

### III. ANALYSIS

Plaintiff brings a claim under 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment rights against all Defendants. (ECF No. 1 ¶ 1.) Plaintiff alleges Belavich and Beard deprived him of his Constitutional Right to Free Speech protected by the First Amendment and deterred further speaking out by terminating Plaintiff's employment with CDCR. (ECF No. 1 ¶ 70.) Plaintiff asserts Viegas "intentionally mischaracterized and misrepresented" Plaintiff's conduct and falsely accused him of "violating instructions not to discuss the details of the interview" in an effort to retaliate against Plaintiff's speech and prevent future speech. (ECF No. 1 ¶ 69.) Plaintiff argues Viegas intentionally failed to comply with the CDCR Operations Manual and violated Plaintiff's due process rights under the Fourteenth Amendment. (ECF No. 11 at 11.) Defendants argue they are entitled to qualified immunity and Plaintiff's Complaint is insufficient to remove their immunity. (ECF No. 8-1 at 9; ECF No. 18-1 at 8.)

#### A. Qualified Immunity for all Defendants

Plaintiff argues his speech is protected by the First Amendment because he spoke on a matter of public concern. (ECF No. 1 ¶ 46–47.) Plaintiff alleges the First Amendment protects his right to release protected health information because Plaintiff believed there was a serious or imminent threat to the health or safety of an individual or the public. (ECF No. 1 ¶¶ 46–49.) Because the Court finds that the right is not clearly established it declines to review whether Defendants' actions violated the right. Defining the right narrowly, the right at issue is not merely speaking on a matter of public concern, but of speaking on the private health records of a patient which may relate to a matter of public concern.

With respect to whether the right is clearly established, "[b]ecause the focus is on whether

the [official] had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). For this reason, the Supreme Court has emphasized the importance of ensuring the evidence is reviewed through the appropriate lens when deciding the "clearly established prong" on summary judgment. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743. Thus, "qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice *their conduct is unlawful*.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (emphasis added).

Plaintiff has not cited and the Court cannot find any cases that prohibit a government employer from firing an employee who allegedly violated Health Insurance Portability and Accountability Act ("HIPAA") disclosure laws. Without any case law, the Court cannot say Defendants were aware that Plaintiff had a right to disclose confidential medical information to the media without fear of reprisal. Thus, Defendants were not on notice that their conduct was unlawful and are entitled to qualified immunity. Furthermore, the Court feels that amendment would be futile because Plaintiff will not be able to demonstrate that the right to disclose private medical information was clearly established at the time of Defendant's conduct.

B. Due Process Violation against Viegas

In his opposition, Plaintiff alleges Viegas's actions "violated Plaintiff's due process rights." (ECF No. 11 at 12.) Plaintiff alleges Viegas denied Plaintiff reasonable time to retain a lawyer after Plaintiff requested additional time. Plaintiff alleges Viegas's actions violated the CDCR Operations Manual. (ECF No. 1 ¶ 62, 65 (citing CDCR Operations Manual, Chap. 3, Art. 14, § 31140.27).) However, Plaintiff's Complaint does not assert a claim for due process violations against Viegas.[2] Plaintiff cannot cure the lack of specificity in his complaint by

---

[2] Plaintiff's complaint is poorly formatted. The complaint does not separate out different causes of action but rather has one continuous set of allegations without specifying claims against Defendants. The only discussion of the claims brought against Defendants is stated in the opening paragraph, "Plaintiff brings this action based on the Constitution of the United States, the First Amendment and Federal Statutes including 42 USC section 1983." (Compl., ECF No. 1 ¶ 1.) Plaintiff mentions violations of his First Amendment right to free speech throughout the complaint, but fails to mention due process. Plaintiff's broad reference to the Constitution of the United States without later reference to the specific right is insufficient to raise a due process claim and the Court will not read one

alleging claims in his opposition.  Accordingly, the Court does not consider this argument.

**IV.    CONCLUSION**

For the reasons set forth above, the Court hereby GRANTS without leave to amend, Defendants' Motions to Dismiss (ECF Nos. 8 & 18).  The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated: July 12, 2017

Troy L. Nunley
United States District Judge

---

into the complaint.